# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4108 | **DATE** | 12/12/2002 |
| **CASE TITLE** | Miscellaneous Warehousemen, et al. vs. Budget Rent A Car Systems, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Budget's motion to vacate arbitration award is denied. Local 701's motion for judgment is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 13 2002 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | G.Y. docketing deputy initials | 13 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| SLB courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MISCELLANEOUS WAREHOUSEMEN, )
AIRLINE, AUTOMOTIVE PARTS, SERVICE, )
TIRE & RENTAL, CHEMICAL AND )
PETROLEUM, ICE, PAPER AND RELATED )
CLERICAL AND PRODUCTION )
EMPLOYEES UNION, LOCAL NO. 781, )
AFFILIATED WITH THE INTERNATIONAL )
BROTHERHOOD OF TEAMSTERS, )
)
    Plaintiff/Counter-Defendant, )
)
v. )
)
BUDGET RENT A CAR SYSTEMS, INC., )
d/b/a BUDGET RENT A CAR OF CHICAGO, )
)
    Defendant/Counter-Plaintiff. )

**DOCKETED**

DEC 1 3 2002

Case No. 02 C 4108

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice, Paper and Related Clerical and Production Employees Union, Local No. 781 ("Local 781"), affiliated with the International Brotherhood of Teamsters, filed a complaint seeking enforcement of an arbitration award against Defendant, Budget Rent A Car Systems, Inc., doing business as Budget Rent A Car of Chicago ("Budget"). Budget counterclaimed to vacate the arbitration award. Local 781 then filed a Motion for Judgment, and Budget filed a Motion to Vacate the Arbitration Award.

For the reasons that follow, Local 781's Motion for Judgment is granted, and Budget's Motion to Vacate is denied.

13

## BACKGROUND

Local 781, a labor organization, and Budget are parties to a collective bargaining agreement ("CBA"), which is attached to the complaint as Exhibit A. Article 6, section 2 of the CBA, entitled "Corrective Discipline and Rules of Conduct", provides that:

> Rules of conduct that are posted are incorporated herein by reference. The Employer will not discharge employees without just cause. Offenses for any complaint will be cause for the following disciplinary action:
> - 1st Offense – Issue a written warning with a copy to the Union and the Union Steward.
> - 2nd Offense – Issue a written warning with a copy to the Union and the Union Steward.
> - 3rd Offense – Issue a written warning with a copy to the Union and the Union Steward.
> - 4th Offense – Discipline *up to and including* discharge.

(Compl. Ex. A at 10) (emphasis added). Article 6, section 2 also provides that "No warning notice need be given in the case of . . . b. Immoral conduct while on duty." (Compl. Ex. A at 11.)

Article 7 of the CBA sets forth the procedure for the adjustment of employee or union grievances and provides that grievances that are not settled between them may be submitted to an arbitrator empowered to settle such grievances. Article 7, section 7(d) of the CBA provides that "The decision of the arbitrator shall be binding upon the Employer and the Union." (Compl. Ex. A at 14.)

Thomas Williams ("Williams") was a member of Local 781. Williams was employed by Budget until he was terminated on or about July 20, 2001, for bringing to work a rap song, entitled "Budget O'Hare Bitches" ("the song"), that he had written. Pursuant to the CBA, Williams filed a timely grievance, protesting his termination. When the grievance was not resolved through the initial steps of the grievance procedure, it was submitted to arbitration in accordance with Article 7 of the

-2-

CBA.

A hearing was held before an arbitrator on January 23, 2002, during which Local 781 and Budget presented evidence. Local 781 and Budget submitted the following question to the arbitrator, "Was the Grievant's termination for just cause[;] and[,] if not, what is the appropriate remedy?" (Compl. Ex. B.)

The arbitrator reviewed the transcripts and the briefs submitted by the parties and made the following factual findings. Williams belonged to a rap group, involving some co-workers, which often discussed rap music during working hours. (Compl. Ex. B.)

> On July 15, 2001, a Sunday night, [Williams] brought a rap song he wrote to work. The song contained obscene, misogynist and racist language, and violent imagery. It also made specific reference to [Williams'] Supervisor, by name, in the context of what can fairly be characterized as explicitly violent lyrics. [Williams] left the lyrics on a pump in an open area where others had access to it. Another employee picked up the lyrics and brought them to the attention of the Supervisor referred to in the lyrics, who thereafter brought them to the attention of his Supervisor. [Williams], who appeared to be upset about the incident, was allowed to go home. The Supervisor also was not at work the following several days.
>
> Once it was ascertained that it was [Williams] who wrote the lyrics and left them on the pump, [Williams] was fired for violating the Company's harassment and violence policies.

(*Id.*) Williams had received three disciplinary warnings before the incident on July 15, 2001. (*Id.*)

The arbitrator opined that Budget had "legitimate, serious concerns arising from [Williams'] grossly irresponsible conduct, even if the conduct was not intended to generate and/or result in such controversy. (*Id.*) The arbitrator stated that the record before him indicated that Williams "did not intend to threaten or harass anyone in the workplace, nor did he intend to subject anyone in the workplace to unwelcome words and/or images which might be deemed offensive to at least some who were not fans of or familiar with rap music." (*Id.*) The arbitrator stated that, while Williams

had a lawful right to discuss such music with like-minded co-workers, he did not have the right to bring such materials into the workplace in a way that made it likely that they might be found by those who found them offensive, threatening or harassing. (*Id.*)

The arbitrator reasoned that Williams'

> behavior in this regard, although more likely than not careless rather than willful, in the [arbitrator's] opinion, was sufficiently egregious to warrant strong disciplinary action under the just cause standard, particularly where, as here, [Williams] was a short term employee with a marginally acceptable work record.
>
> The only remaining question that needs to be addressed in this matter is whether termination was appropriate in these circumstances under the just cause standard. Based upon all of the foregoing considerations and the legitimate competing interests that have been raised by both parties, the undersigned believes that [Williams'] termination was somewhat excessive. This conclusion is based primarily upon the fact that [Williams'] misconduct, although serious, was not willful in that it was not intended to threaten, harass, or even make uncomfortable those who found his words and images to be controversial and/or offensive in any way. Although the [arbitrator] does not wish to diminish the legitimacy and importance of [Budget's] concerns and interests in this matter, it is the [arbitrator's] conclusion that [Williams], although displaying extraordinarily poor judgment, did not willfully engage in behaviors that were disrespectful of those interests and concerns.

(*Id.*)

The arbitrator concluded that "it is reasonable under the just cause standard to order Budget to offer reinstatement to [Williams], without back pay, under a last chance arrangement, to his former or an equivalent position." (*Id.*) Any further misconduct during the twelve months following his re-employment would subject Williams to immediate discharge without the right to any further progressive discipline. (*Id.*)

Budget has not reinstated Williams.

## ANALYSIS

"Unless the arbitral decision does not 'dra[w] its essence from the collective bargaining

agreement[,]'" a federal court must enforce an arbitration award and "is not entitled to review the merits of the contract dispute" "even when the basis for the arbitrator's decision may be ambiguous." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 764 (1983) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). The arbitrator is limited to interpreting the CBA, and an award that exceeds this limitation may be set aside. *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991). "An award based on the arbitrator's personal or policy views rather than on the contract is unenforceable." *Chicago Typographical Union*, 935 F.2d at 1505. However,

> the issue for [the court] in this case is not whether the arbitrator's interpretation of the contract was correct but whether it was a bona fide interpretation of the contract. . . . we take seriously the twin propositions that (1) the reviewing court's function . . . is at an end when it concludes that what the arbitrator did was interpretation of the contract, and (2) when in doubt[,] the court must find that it was interpretation.

*Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 187 (7th Cir. 1985).

A federal "court may not enforce a collective bargaining agreement that is contrary to public policy. . . . Such a policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co.*, 461 U.S. at 766 (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). While "a court may refuse to enforce a [CBA] when the specific terms contained in that agreement violate public policy . . . [the] decision in [*W.R. Grace & Co.*] does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987). "[T]he question of public policy is wholly independent from the collective bargaining agreement and is ultimately one for the court."

-5-

*Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of America*, 959 F.2d 685, 687 (7th Cir. 1992).

Budget argues that the arbitrator's award should be vacated because the arbitrator disregarded Article 6, section 2 of the CBA. Budget argues that Article 6, section 2 gives it the power to fire employees who, like Williams, commit four offenses in one year. Budget argues that the arbitrator exceeded his authority because (1) by reinstating Williams, the arbitrator read a requirement for a fifth offense before Williams could be terminated into the CBA and (2) the arbitrator imposed a requirement of progressive discipline on Budget's contractual right to summary discharge for "immoral conduct while on duty".

The arbitration award did not exceed the arbitrator's authority as set out in the CBA. The question submitted to the arbitrator was whether Williams was terminated for just cause and, if he had not been, what was the appropriate remedy. The arbitrator found that Williams was terminated for violating Budget's harassment and termination policies. The arbitrator concluded that termination was not appropriate for this offense under the just cause standard because the conduct was not willful and "not intended to threaten, harass or . . . make uncomfortable" Williams' co-workers.

Article 6, section 2 of the CBA provides that for the fourth offense, the offending employee shall be subject to "[d]iscipline *up to and including* discharge." It is clear from the arbitrator's written opinion that the arbitrator interpreted the CBA to permit discharge for the fourth offense but not to require it. The arbitration award of reinstatement without back pay is an interpretation of Article 6, section 2 of the CBA for an offense that the arbitrator determined not to be just cause for termination. Moreover, the arbitrator's written opinion makes it clear that the arbitrator rejected, at

least implicitly, Budget's contention that Williams' conduct was "immoral conduct while on duty", permitting summary discharge. Therefore, the arbitration award cannot be vacated on this ground.

Budget next argues that the arbitration award should be vacated because it violates public policy against harassment based on race and sex in the workplace.

The public policy against racial discrimination and sexual harassment in the work place is well defined. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race and sex. 42 U.S.C. § 2000e-2.

However, the arbitration award of reinstatement does not violate this public policy. In *Chrysler Motors Corp.*, an arbitrator awarded reinstatement of an employee who had sexually assaulted a female co-worker. The district court enforced the award, and the Seventh Circuit affirmed, noting that "[t]he arbitrator found it significant that [the grievant] had not received warnings or discipline for any prior misconduct before being discharged . . . [and] also found that the evidence upon which [the grievant's] discharge was based did not indicate that he could not be rehabilitated and that Chrysler had a system of progressive discipline." *Chrysler Motors Corp.*, 959 F.2d at 688. The Seventh Circuit held that "while we do not condone [the grievant's] behavior, it was within the purview of the [CBA] and public policy for the arbitrator to order his reinstatement." *Chrysler Motors Corp.*, 959 F.2d at 689; *see also Communication Workers of America v. Southeastern Elect. Coop. of Durant, Okla.*, 882 F.2d 467 (10th Cir. 1989) (affirming enforcement of arbitration award of reinstatement where grievant had sexually harassed a customer).

Here, the arbitrator found that the rap song had been discovered through carelessness not willfulness. Williams had not been disciplined previously for harassing other employees. Rather, while Williams had been disciplined three times previously, none of those disciplinary incidents had

been for harassing another employee. Budget also has a system of progressive discipline which provided for a sanction "up to and including discharge" for a fourth offense that was not of the same type as the earlier offenses. Furthermore, while the imagery in the rap song was violent and misogynist, there is no indication that Williams had ever behaved violently toward his coworkers or had been disciplined for doing so. The award of reinstatement was "within the purview of the [CBA] and public policy"; and, therefore, the arbitration award will not be vacated on this ground. *See Chrysler Motors Corp.*, 959 F.2d at 689.

## CONCLUSION

For the reasons stated herein, Budget's Motion to Vacate Arbitration Award is denied, and Local 781's Motion for Judgment is granted.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: December 12, 2002